**Jimmy R. WHITE and Chris R. White and Shannon White, Minors, By and Through their guardian, Jimmy R. WHITE, Plaintiffs-Appellees,**

**v.**

**PIERCE COUNTY and Raymond Fjetland, the Pierce County Sheriff; Rod Weast, Ron Buhl, and Dave Delton, as Deputy Pierce County Sheriffs; and Rod Weast and "Jane Doe" Weast, individually and the marital community of them composed; Ron Buhl and "Jane Doe" Buhl, individually and the marital community of them composed; and Dave Delton and "Jane Doe" Delton, individually and the marital community of them composed, Defendants-Appellants.**

**Nos. 85–3993, 85–4018.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 4, 1986.

Decided Aug. 20, 1986.

---

Sverre O. Staurset, Graves, Staurset & Mauritz, Tacoma, Wash., for plaintiffs-appellees.

Daniel R. Hamilton, Deputy Pros. Atty., Tacoma, Wash., for defendants-appellants.

Before WRIGHT, SNEED and SCHROEDER, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge.

In this case we are asked to decide whether deputy sheriffs investigating a report of child abuse have qualified immunity from suit for warrantless entry.

The Whites brought this action under 42 U.S.C. § 1983, contending that their Fourth Amendment rights against unreasonable searches and seizures were violated. The deputies appeal the denial of their motion for summary judgment, relying on the qualified immunity rule of *Mitchell v. Forsyth,* —— U.S. ——. 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). We reverse.

FACTS

On the evening of September 22, 1982, Deputy Sheriffs Weast, Delton and Buhl were dispatched to investigate a report from Washington State Child Protective Services (CPS) that a seven-year-old child had been seen playing in the White's yard without his shirt on and with severe welts on his back. It is undisputed that the officers had a duty to investigate such reports under RCW 26.44.050.[1]

---

1. RCW 26.44.050 reads in relevant part:
 Upon the receipt of a report concerning the possible occurrence of abuse or neglect, it shall be the duty of the law enforcement agency or the Department of Social and Health Services to investigate and provide the protective services

Upon arrival at the Whites' home, Deputy Weast told Mr. White of the reported child abuse and asked to examine his son, who could be seen from the doorway and appeared to the deputies to be about seven years old. Mr. White responded that his son was eleven years old, and refused to allow the deputies to examine his son without a warrant or court order. The child attempted to show the deputies his back, but Mr. White ordered him not to and to go to another room.

Deputy Weast insisted upon examining the child's back because he believed, based on Mr. White's conduct, that the child had been abused and would be injured or removed from the residence if the deputies were required to obtain a court order. Mr. White became violent and abusive and responded with extreme profanity and insults. This confrontation lasted fifteen to twenty minutes while Weast explained the reason for his investigation. When Deputy Weast attempted to enter the house, White assaulted him and pushed him back onto the porch. The deputies then forcibly subdued and handcuffed White. They did not strike or beat him. During the struggle, one of them placed an object against White's earlobe in an attempt to stop his resistance. The deputies then entered the house, examined the child's back, and found no signs of abuse. White was arrested and charged with assault and interfering with a police officer. These charges were later dismissed.

PROCEEDINGS BELOW

The Whites brought this Section 1983 action, contending that the deputies' warrantless entry into their home violated their Fourth Amendment right to be free from unreasonable searches and seizures, and that the deputies had used excessive force when arresting Mr. White. All defendants moved for summary judgment, supported by the affidavits of the three deputies. The Whites opposed this motion only with

an unsworn "Statement of Reasons and List of Authorities in Opposition to Defendant's Motion for Summary Judgment," signed only by their attorney, who expressly disclaimed any personal knowledge. The defendants appeal the denial of their motion.

ANALYSIS

*Appealability*

 Generally, the denial of a motion for summary judgment is not appealable. *Simons v. United States*, 497 F.2d 1046, 1050 (9th Cir.1974). However, the Supreme Court recently created a limited exception to this rule in *Mitchell v. Forsyth*, —— U.S. ——, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). "[A] district court's denial of a claim of qualified immunity, to the extent it turns on an issue of law, is an appealable final decision...." *Id.*, 105 S.Ct. at 2817. The denial of the deputies' motion is therefore appealable to the extent that motion was based on qualified immunity. The appeals of the other appellants, and the appeals of the deputies to the extent they are based on grounds other than qualified immunity, are unappealable and are dismissed.

*Standard of Review*

Because the claim of qualified immunity turns on a "purely legal question," *Mitchell*, 105 S.Ct. at 2818, our review is *de novo*. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). When reviewing a grant or denial of summary judgment, we apply the same standard as did the trial court and review the evidence in the light most favorable to the nonmoving party. *See Water West, Inc. v. Entek Corp.*, 788 F.2d 627, 628–29 (9th Cir.1986).

Here, however, the Whites filed no affidavits or other evidence to oppose the motion for summary judgment. Their attor-

section with a report in accordance with the provision of Chapter 74.13 RCW, and where necessary to refer such report to a court.

A law enforcement officer may take, or cause to be taken, a child into custody without a court

order if there is probable cause to believe that the child is abused or neglected and that the child would be injured or could not be taken into custody if it were necessary to first obtain a court order....

ney's statement was not an affidavit. It was not sworn to under oath, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n. 17, 90 S.Ct. 1598, 1608 n. 17, 26 L.Ed.2d 142 (1970), and gave no facts within the personal knowledge of the affiant, *see Automatic Radio Manufacturing Co. v. Hazeltine Research, Inc.*, 339 U.S. 827, 831, 70 S.Ct. 894, 896, 94 L.Ed. 1312 (1950), *overruled on other grounds, Lear, Inc. v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Fed.R.Civ.P. 56(e).

Even in the absence of opposing affidavits, summary judgment is inappropriate where the movant's papers are insufficient on their face. *See Hamilton v. Keystone Corp.*, 539 F.2d 684, 686 (9th Cir.1976). In the case before us, we must accept the facts stated in the affidavits of the deputies as true and determine whether they are entitled to summary judgment as a matter of law.

*Qualified Immunity*

■ Government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727–38, 73 L.Ed.2d 396 (1982).

1. *Warrantless Entry—Probable Cause Plus Exigent Circumstances*

■ At the time of the entry into the home, it was settled constitutional law that, absent exigent circumstances, police could not enter a dwelling without a warrant even under statutory authority where prob-able cause existed. *See Payton v. New York*, 445 U.S. 573, 588–90, 100 S.Ct. 1371, 1381–82, 63 L.Ed.2d 639 (1980). Washington law provides that law enforcement officers may not take a child into custody without a court order unless they have "probable cause to believe that the child is abused or neglected and that the child would be injured or could not be taken into custody if it were necessary to first obtain a court order ...". RCW 26.44.050. This provision defines the requirement of probable cause plus exigent circumstances. If the deputies complied with the statute, they have satisfied the constitutional requirement and are immune from suit.

Probable cause is ordinarily a question for the jury, and denial of summary judgment is appropriate only if no reasonable jury could find that the officers had probable cause. *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir.1984). We have applied this rule when determining whether officers engaging in a search had qualified immunity. *See Bilbrey v. Brown*, 738 F.2d 1462, 1467 (9th Cir.1984). *Bilbrey* was decided before *Mitchell v. Forsyth*. In *Mitchell*, the Court stated that qualified immunity "is an immunity from suit rather than a mere defense to liability; and ... it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell*, 105 S.Ct. at 2816. If the question of probable cause is allowed to go to the jury where qualified immunity is at issue, this defense will be effectively lost. *See id.* Here, the existence of probable cause was to be determined by the trial court, and is appropriate for our determination on appeal.

Applying the law to the facts as shown in the deputies' affidavits, we conclude that the deputies had probable cause to believe the child had been abused and that the child would be injured or could not be taken into custody if it were first necessary to obtain a court order. The CPS report was corroborated by observations made by the deputies after their arrival at the Whites' home. From the door they could see a boy who, Mr. White admitted, appeared to be about seven years old. He stopped the

child who attempted to show his back to the deputies. White became extremely abusive and violent. The deputies could reasonably conclude that Mr. White was attempting to hide past abuse, and that, if they left to get a court order, Mr. White might abuse the child again or flee with him. Having complied with the statute, the deputies are immune.

### 2. Excessive Force

▇ The Whites contend that the deputies used excessive force in the arrest of Mr. White. The use of excessive force by police officers in an arrest violates the arrestee's Fourth Amendment right to be free from an unreasonable seizure. *See Robins v. Harum,* 773 F.2d 1004, 1007 (9th Cir.1985). The reasonableness of force is analyzed in light of such factors as the requirements for the officer's safety, the motivation for the arrest, and the extent of the injury inflicted. *McKenzie,* 738 F.2d at 1011. Qualified immunity is a defense to a claim of excessive force. *See Gregory v. Thompson,* 500 F.2d 59, 65 (9th Cir.1974).

▇ The question of the reasonableness of the force used in an arrest is usually for the jury. *See, e.g., Robins,* 773 F.2d at 1010; *McKenzie,* 738 F.2d at 1011. However, as with probable cause, the trial court, and this court on appeal, must decide this issue on summary judgment where qualified immunity is at issue. On this record, there is no indication that the deputies used more force than necessary to subdue White, who was violently resisting them and preventing them from performing their statutory duty of examining the child. There is nothing in the record to indicate that Mr. White was injured. He was not struck or beaten. The deputies could have reasonably believed the force used to subdue Mr. White was necessary for their immediate safety.

The court's denial of the motion for summary judgment by deputies Weast, Delton, and Buhl is reversed. The appeals of the other appellants are dismissed for lack of jurisdiction.

SCHROEDER, Circuit Judge, Dissenting.

This is a narrow, interlocutory appeal on an incomplete record. The only issue is whether the defendants have demonstrated, as a matter of law, that they are immune from suit. *Mitchell v. Forsyth,* —— U.S. ——, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The record must be viewed in the light most favorable to the plaintiff. *Kraus v. County of Pierce,* 793 F.2d 1105, 1110 (9th Cir.1986). To prevail in their motion for summary judgment, the defendants had to show that they had probable cause to believe both that White's son had been abused, and, further, that the boy would be injured or secreted from them if they waited to obtain a warrant. In my opinion, they demonstrated neither.

The deputies went to Jimmy White's house with only a report that a child of seven with welts on his back had been seen in the yard. When White opened the door, they observed that the household included a child who appeared to be about that age. They then demanded to examine the back of the child, and White refused. The deputies continued their insistence for 20 minutes, until White eventually resorted to profanity, and resisted the deputies' forceable attempt to enter the house.

The majority states that the deputies could have reasonably concluded that White was attempting to "hide past abuse." The affidavits and the record do not provide any basis for such a conclusion, nor do they even use the word "hide." All that they demonstrate is that White stood on his constitutional rights and refused to allow the officers to examine the child without showing, by means of a warrant, that they had reason to do so.

White's refusal to permit the police to do that which the Constitution prohibits them from doing cannot be used to create the probable cause necessary to justify that act. The Supreme Court has made clear that an individual may not be punished for failing to obey a police officer's unlawful command. *Wright v. Georgia,* 373 U.S.

284, 83 S.Ct. 1240, 10 L.Ed.2d 349 (1963). Our court has also stated in no uncertain terms that an individual's refusal to permit the police to enter her home without a warrant may not be used against her in a trial for harboring a suspect. *United States v. Prescott*, 581 F.2d 1343 (9th Cir. 1978). We said that asserting the right to refuse a warrantless entry can neither be a crime itself nor serve as evidence of a crime. *Id.* at 1351. *A fortiori* the refusal to permit a warrantless entry cannot be used to create the circumstances justifying such an entry.

Nor can White's eventual resort to profanity in his objection to the entry serve to justify the entry. The Supreme Court has held that penalizing profanity infringes the speaker's rights of free expression. *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). Speaking for the majority, Justice Harlan explained that "one man's vulgarity is another's lyric." *Id.* at 25, 91 S.Ct. at 1788. Thus, under *Cohen*, the fact that White chose to express his objections to the entry with colorful language should have no bearing on whether the police had observed circumstances justifying the entry.

Child abuse is a heinous crime. So are murder and rape. Just as the repulsiveness of the latter two crimes does not affect the constitutional restrictions placed on police officers, neither should our repugnance to the former crime cause us to condone police procedures that infringe constitutional protections.

Section 1983 is an important deterrent against police conduct which violates the fourth amendment's guarantee of security in our homes from unreasonable police intrusion. These deputies are not immune if they violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The rights which plaintiffs assert in this case are clearly established. "At the very core [of the fourth amendment] stands the right of a man to retreat into his own home and there be free from unreasonable govern-mental intrusion." *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 683, 5 L.Ed.2d 734 (1961) (citing Howell's State Trials and early Supreme Court precedent). *See also Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *United States v. United States District Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972) ("[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.").

In holding that state officers may appeal on an interlocutory basis the denial of a motion for summary judgment in section 1983 cases, the Supreme Court created a mechanism for weeding out claims which lack merit as a matter of law. *Mitchell*, 105 S.Ct. at 2815–16. Such appeals should not become a device permitting appellate judges to become triers of fact and to resolve conflicting inferences in favor of police officers. In my view the majority has succumbed to that temptation. I would affirm the district court.