42 F.3d 1399
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Gregory DUVALL, Plaintiff-Appellant,
v.
CITY OF SANTA MONICA, Defendant-Appellee.
 No. 93-56548.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 3, 1994.
Decided Dec. 7, 1994.
 
 1
 Before: O'SCANNLAIN and T.G. NELSON, Circuit Judges, and MERHIGE,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 * Gregory DuVall (DuVall) appeals the district court's summary judgment in favor of the City of Santa Monica (City) in his civil rights suit against the City for breaking into his home without a warrant, taking him into custody, and allegedly using excessive force by having a police dog attack him. We affirm the district court's decision.
 
 II
 
 4
 DuVall's appeal involves only the City's liability for the actions of its officers, as all individual defendants were dismissed with prejudice on DuVall's motion. To prevail on a 42 U.S.C. Sec. 1983 claim against the City, DuVall must show: (1) the officers violated his constitutional rights, and (2) the City's policy caused the violation. Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 690-92 (1978). Because DuVall has failed to show that his constitutional rights were violated, we do not address the issue of the City's policies.
 
 III
 
 5
 DuVall contends that his constitutional rights were violated in two respects: (1) when officers, without a warrant and without justification, entered and searched his home in violation of the Fourth Amendment, and (2) when officers took him into custody by means of a dog attack in violation of the Fourth Amendment.
 
 
 6
 A. Entry. Viewing the facts in the light most favorable to DuVall, we hold that the officers' entry, albeit warrantless and unannounced, was justified by the existence of exigent circumstances. "Exigent circumstances are those circumstances that would cause a reasonable person to believe that entry (or other relevant prompt action) was necessary to prevent physical harm to the officers and other persons...." United States v. Echegoyen, 799 F.2d 1271, 1278 (9th Cir.1986) (internal quotations omitted). "Included within this definition of exigent circumstances is the need to protect or preserve life or avoid serious injury." Id. (internal quotations and modifications omitted).
 
 
 7
 Here, exigent circumstances occasioned the officers' entry into DuVall's trailer home. The officers responded to an emergency call from the relative of a man who had telephoned his mother to tell her he was armed and suicidal, asked her to listen as he clicked the trigger of a gun aimed at his temple, and told her he "fe[lt] like going out and killing everybody." The reporting relative refused to go herself to DuVall's home because she said she "valued her life too much." After verifying the call with DuVall's mother, the officers went to DuVall's trailer home and called him from a car phone. DuVall maintained he had only a pellet gun, but he refused either to produce the weapon or to leave the trailer. He then turned off his lights and announced he was going to bed. Unable to verify what sort of weapon DuVall possessed, and having learned that DuVall possessed a license for a gun, the officers reasonably feared for DuVall's safety as well as that of neighbors and themselves. Under the circumstances, it was reasonable for the officers to believe that warrantless entry was necessary to preserve lives and avoid serious injury. See Russo v. City of Cincinnati, 953 F.2d 1036, 1043-44 (6th Cir.1992) (exigent circumstances justified warrantless entry into home where officers knew individual was (1) mentally disturbed; (2) possessed two knives; (3) radio transmission described him as "suicidal;" and (4) immediately prior to entry, he had turned out lights and fallen silent).
 
 
 8
 Because a warrant could not have been obtained in time to assure the safety of DuVall or others, the officers' entry into DuVall's home was justified. "Exigent circumstances alone are insufficient as the government must also show that a warrant could not have been obtained in time." Echegoyen, 799 F.2d at 1279 (internal quotations and ellipsis omitted).
 
 
 9
 Exigent circumstances also justify the police officers' failure to comply with 18 U.S.C. Sec. 3109, which requires police to knock and announce their presence before entry to execute a search warrant. United States v. Turner, 926 F.2d 883, 886 (9th Cir.) cert. denied, 112 S.Ct. 103 (1991). "A police officer's reasonable belief that announcement might place him or his associates in physical peril constitutes exigent circumstances.... Exigent circumstances also include fear for the safety of bystanders." Id. (citations, quotations and ellipsis omitted). In the case before us, the officers reasonably feared harm not only to themselves and bystanders, but to DuVall, who was known to be armed, whether with a pellet or more powerful gun, and who had threatened to kill himself and others.
 
 
 10
 B. Custody. Seizure of a mentally disturbed person is analogous to a criminal arrest and therefore must be supported by probable cause. See Maag v. Wessler, 960 F.2d 773, 775 (9th Cir.1991). California Welfare & Institution Code Sec. 5150 provides that police officers may take into protective custody any person who, as a result of a mental disorder, poses a threat to himself or others. After taking DuVall into custody, the police took him to the hospital for treatment of injuries he received in falling when the dog attacked him, as well as dog bites to his right leg. After holding him overnight, the officers took him back to the hospital for psychiatric evaluation. Given the facts of this case, we find that the officers had probable cause to take DuVall into custody for medical treatment and evaluation pursuant to section 5150.
 
 
 11
 C. Excessive force.
 
 
 12
 The district court held that "the use of the police dog was constitutional" as a matter of law. While we hold now that the use of the dog in this instance did not violate DuVall's constitutional rights, we emphasize that we do not hold the use of police dogs or the police department's policy governing the use of police dogs to be incontrovertibly constitutional. See Chew v. Gates, 27 F.3d 1432, 1435 (1994). Rather, the use of police dogs is subject to excessive force analysis. Mendoza v. Block, 27 F.3d 1357, 1362 (9th Cir.1994).
 
 
 13
 Claims against police officers for the use of excessive force are analyzed under the Fourth Amendment "reasonableness" standard, which is an objective one. Graham v. Connor, 490 U.S. 386, 396 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). In determining whether the use of force to effect a seizure is reasonable, "the nature and quality of the intrusion on the individual's Fourth Amendment interests" must be balanced against "the countervailing government interests at stake." Id. (internal quotation omitted); see also Chew, 27 F.3d at 1440.
 
 
 14
 Three factors are considered in weighing the Governmental interests involved: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396 (citing Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)).
 
 
 15
 "The three factors ... are not to be considered in a vacuum but only in relation to the amount of force used to effect a particular seizure." Chew, 27 F.3d at 1441. In Chew, we considered but did not decide whether the use of dogs trained to bite and seize amounts to deadly force. S ee id. at 1435, 1442. If such use does amount to deadly force, it might be unconstitutional to employ dogs in circumstances like those of Garner, 471 U.S. at 3, where police used deadly force to prevent the escape of a suspect known to be unarmed. See also Chew, 27 F.3d at 1452-53 (Norris, J., concurring in part and dissenting in part). The facts before us, however, are unlike those of Garner or Chew. The officers who took DuVall into custody knew that DuVall was armed, and had probable cause to believe that he posed a significant threat of bodily harm to themselves or others, including himself.[1] As Judge Norris observed in Chew,
 
 
 16
 It is important to make clear that even if the unleashing of [the dog] constituted the application of deadly force against Chew, it would not have been excessive force if [the officer] had probable cause to believe that Chew posed a significant threat of serious bodily harm to themselves or to others.... In that case, Chew would have no standing to challenge the constitutionality of the LAPD canine policy because he would have suffered no constitutional injury.
 
 
 17
 27 F.3d at 1455.
 
 
 18
 We hold that even assuming the use of dogs trained to bite and seize constitutes use of deadly force, the use of such a dog in this instance, by officers who wished to prevent harm to themselves and to the victim--a man locked in a darkened trailer with a gun, who refused to come out or give up his weapon, and whom relatives attested to be suicidal and possibly homicidal--was objectively reasonable. See Mendoza, 27 F.3d at 1362-63 (use of a police dog trained to bite and seize was objectively reasonable where officers had reason to believe plaintiff posed an immediate threat to their safety and the safety of others). "The reasonableness of force is analyzed in light of such factors as the requirements for the officer's safety, the motivation for the arrest, and the extent of the injury inflicted." Id. at 1362 (citing White v. Pierce County, 797 F.2d 812, 816 (9th Cir.1986) (quotations omitted)).
 
 
 19
 Review of the Graham factors leads to the same conclusion. As we have indicated, "the most important single element ... whether the suspect poses an immediate safety threat to the safety of officers or others," Chew, 27 F.3d at 1441, weighs squarely against DuVall. Under the facts as DuVall himself describes them, the officers had objective reason to believe DuVall posed an immediate safety threat. The second factor, severity of the crime, also weighs against DuVall: the police had probable cause to think he was likely to kill himself and others. The third factor, actively resisting arrest, is less clearly indicated. While DuVall refused to come out of the trailer when asked to do so by the police, he was not taken into custody until one to two hours after he stated his refusal to the police. Whether or not he would have cooperated had he been ordered out and warned of the dog's presence is subject to mere speculation. Given the weight of the other two factors, and the reasonableness of the officers' decision to employ the dog in order to prevent serious injury or death to DuVall or themselves, we hold that the use of force in this case may be deemed reasonable as a matter of law. While excessive force questions are often reserved for the jury, the court may determine that the force used by police officers was reasonable as a matter of law. Eberle v. City of Anaheim, 901 F.2d 814, 820 (9th Cir.1990).
 
 
 20
 Because we hold that DuVall's rights were not constitutionally violated by the officers' entry into his home, or by their use of the police dog to take him into custody, we hold that he has failed to state a claim against the City under Monell. The district court's decision is therefore AFFIRMED.
 
 
 21
 AFFIRMED.
 
 
 
 *
 Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 In addition, the dog in the present case was not let loose to find a hidden person out of sight and command of the officer, as was the case in Chew. Instead, the dog was used in a confined space where he was subject to the control of the officers