Ray **DUNKLIN** and Demetris Dunklin, Plaintiffs,

v.

**LOWNDES COUNTY; City of Fort Deposit; Wade Head, in His Individual Capacity and Official Capacity as Former Police Chief of Fort Deposit; John Hulett, in His Individual Capacity and Official Capacity of Lowndes County; Rufus Mitchell, Individually; and Stephon Davidson, Individually, Defendants.**

Civ. A. No. 94–D–1129–N.

United States District Court, M.D. Alabama, Northern Division.

June 30, 1995.

**7.** Effective January 9, 1985, § 6–2–3 was amended to provide a two-year statute of limitations in fraud actions.

John F. Dizer, Jr., Jeffrey W. Bennitt, Chalice E. Trucker, Birmingham, AL, for plaintiffs.

George T. Yearout, Aimee B. Board, G. Thomas Yearout, Birmingham, AL, Bart G. Harmon, Daryl L. Masters, Kelly Davidson, Montgomery, AL, for defendants.

## MEMORANDUM OPINION

DE MENT, District Judge.

This matter is presently before the court on Defendants' motions for summary judgment,[1] which were filed February 21, 1995.[2] Defendants contemporaneously filed supporting briefs. Plaintiffs filed a response and supporting brief in opposition to Defendants' motions on March 10, 1995. A careful and full examination of the facts, pleadings and applicable law compels the conclusion that Defendants' motions are due to be granted on Plaintiffs' federal law causes of action and that Plaintiffs' state law causes are due to be dismissed *without prejudice.*

### *Jurisdiction & Venue*

Plaintiffs allege that the Defendants abridged certain rights guaranteed by the United States Constitution; therefore, jurisdiction is proper under 28 U.S.C. § 1331.[3] Plaintiffs also allege violations of Alabama statutory and common law. These purported violations transpired during the same transaction and occurrence as the alleged constitutional deprivations; therefore, the court may assert supplemental jurisdiction over Plaintiffs' state law claims. *See* 28 U.S.C.

---

1. Defendants City of Fort Deposit and Wade Head filed a joint motion for summary judgment and Defendant John Hulett filed a motion for summary judgment.

2. On November 23, 1994, Plaintiffs dismissed Counts 3, 4 and 5 of their complaint.

3. Section 1331 provides, "[t]he federal district courts shall have original jurisdiction of all civil actions arising under the ... laws ... of the United States." 28 U.S.C. § 1331.

§ 1367(a).[4] Personal jurisdiction of Defendants' person and venue are not contested.

*Factual Background*

Plaintiffs contend that on or about September 2, 1992, Defendant Head encouraged the Plaintiff Ray Dunklin ("Ray") to become his informant and to inform him of anticipated or planned crimes to be committed in the City of Fort Deposit ("Ft. Deposit"). Plaintiffs aver that, subsequently, Ray gained knowledge of Stephon Davidson ("Stephon") and Raymond Davidson's ("Davidson") plans to burn the house of former Ft. Deposit Mayor, Ralph Norman. Ray then purportedly informed Police Chief Head of the alleged crime. Ray claims that Defendant Head then advised Plaintiff to obtain a witness who would be willing to testify that Ray was not involved in the anticipated arson, but, rather, was Head's informant. Plaintiffs aver that Ray then contacted his nephew, Demetris Dunklin ("Demetris"), to serve as his witness and accompany him on the evening of the anticipated arson.

Plaintiffs aver that when Stephon and Raymond Davidson arrived at the former mayor's home to commit the planned arson, Head and an auxiliary police officer, Rufus Mitchell ("Mitchell") were already in position and watching Norman's premises. At this time, the Plaintiffs were approximately 100 yards from the former mayor's home. Plaintiffs allege that as Stephon and Raymond Davidson were actually striking a match to set fire to the home, Mitchell fired two so-called warning shots with a riot shotgun, with a shot from the weapon allegedly piercing the skull of Raymond Davidson and thereby causing his death.

Early the next morning, Defendant Sheriff John Hulett (Sheriff "Hulett") contacted Ray and requested that he and Demetris come in for questioning.[5] When the Plaintiffs arrived they were purportedly subjected to a false arrest and illegal detention, in violation of the Fourth Amendment to the United States Constitution. Plaintiffs contend that they were falsely imprisoned for a period of twelve hours in violation of 42 U.S.C. § 1983. Plaintiffs also contend that after the purported false arrest and illegal detention, the Defendants falsely and maliciously charged the Plaintiffs with second degree arson. Following a trial, the jury found Plaintiffs not guilty of the crimes of which they were charged.

In carrying out the foregoing acts, Plaintiffs allege that Defendants Head, Hulett, and Ft. Deposit deprived them of equal protection of the law as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, including the right not to be subjected to false arrest, false imprisonment, illegal detention, and malicious prosecution. Furthermore, Plaintiffs claim that Defendant Ft. Deposit is liable to them for their purported damages because of the neglect, carelessness, or unskillfulness of then Police Chief Head and other unnamed officers of the Ft. Deposit police force. Plaintiffs also claim that Ft. Deposit is liable for injuries under respondeat superior pursuant to § 11–47–190 of the *Alabama Code.*

Sheriff Hulett and Lowndes County filed individual motions to dismiss on November 8, 1994.[6] Sheriff Hulett contends that he is entitled to summary judgment on Plaintiff's claim against him in his individual capacity since he is entitled to qualified immunity

---

4. Pursuant to § 1367,
 "... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."
 28 U.S.C. § 1367(a).

5. Actually, Ray was called twice. Once, he spoke to the (then) Ft. Deposit Chief of Police, Wade Head, and once he talked to Sheriff Hulett, who no longer serves in this capacity. (*See* Trial

Trans., Head test., pp. 455–56; Hulett Test., pp. 571–72). When Chief Head requested that Ray come to the town hall, he refused. (*Id.*). However, when Sheriff Hulett communicated with Ray, he told Ray that "if he did not come down, when I did see him, he [Ray] had better have his tooth brush." (*Id.* at 572). When asked what he meant by this, Sheriff Hulett replied, "[t]hat if he [Ray] had done anything wrong, we was [sic] going to put him in jail." (*Id.*).

6. On November 30, 1994, Plaintiffs stipulated to dismiss without prejudice Defendants Lowndes County, Rufus Mitchell, and Stephon Davidson.

because the acts complained of were the product of his good faith performance of discretionary tasks. Hulett also asserts that he is entitled to absolute immunity in his official capacity because, as a state official, he enjoys absolute immunity from suit for retroactive pecuniary damages. He later filed a motion for summary judgment setting forth the same arguments made in his motion to dismiss.

On December 7, 1994, Defendants Ft. Deposit and Wade Head filed a joint motion to dismiss claiming that Plaintiff failed to articulate a claim upon which the court may grant relief. Ft. Deposit also averred that the applicable statute of limitations had run and that the state law claim against Ft. Deposit was also time barred. Ft. Deposit and Head later filed their motion for summary judgment asserting the same defenses and grounds as set forth in their motion to dismiss.

### Summary Judgment Standard

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. *See also Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11.

### Discussion & Analysis

**I. Sheriff Hulett—Official Capacity**

▇ Plaintiffs sued Hulett in his official, as well as individual, capacity. Generally,

"an action against an official in his official capacity imposes liability on the entity that official represents," assuming that entity received notice and an opportunity to be heard. *Parker v. Williams*, 862 F.2d 1471, 1475 (11th Cir.1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471–72, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985)). Amendment Eleven to the Constitution insulates a state from suit in federal court unless the state either consents to suit or waives its Eleventh Amendment immunity. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 98–100, 104 S.Ct. 900, 906–07, 79 L.Ed.2d 67 (1984).[7] The Eleventh Amendment does not shield state officials acting in their official capacity for prospective or injunctive relief. *Edelman v. Jordan*, 415 U.S. 651, 664, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974). However, "regardless of the entity named as defendant, the Eleventh Amendment bars retroactive damage awards which must be paid by the state." *Parker*, 862 F.2d at 1475–76 (citing *Quern v. Jordan*, 440 U.S. 332, 338, 99 S.Ct. 1139, 1143–44, 59 L.Ed.2d 358 (1979)).

■ Sheriffs of Alabama counties are officers of the State of Alabama and not of the respective counties. *Parker*, 862 F.2d at 1475. In Parker, Chief Judge Frank M. Johnson, Jr. certified the following inquiry to the Alabama Supreme Court: "[w]hether the sheriff of a county may be considered an 'employee' of the county for the purposes of imposing liability on the county under the theory of respondeat superior." *Parker v. Amerson*, 519 So.2d 442 (Ala.1987). The Alabama Supreme Court responded in the negative and stated,

"[a] sheriff is not an employee of a county for purposes of imposing liability on the county under a theory of respondeat superior. A sheriff is an executive officer of the State of Alabama, who is immune from suit under Article I, § 14, Alabama Constitution of 1901, in the execution of the duties of his office, except for actions brought (1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute."

*Parker v. Amerson*, 519 So.2d at 442–443.

■ In the instant action, the Dunklins are suing Hulett in his official capacity for retrospective damages in the form of compensatory and punitive damages. However, the State of Alabama has neither consented to suit nor waived its immunity. Moreover, Plaintiffs do not even allege that Hulett's conduct fell within the ambit of one of the exceptions articulated in the Alabama Supreme Court's response to Judge Johnson's certified question in *Parker v. Amerson*. Therefore, the court finds that Defendant Hulett's motion for summary judgment on Plaintiff's claim against Hulett in his official capacity is due to be granted.[8]

---

**7.** A state may also be sued in federal court if Congress overrides the states' immunity pursuant to its authority under Section 5 of the Fourteenth Amendment. *Pennhurst*, 465 U.S. at 99, 104 S.Ct. at 907. The United States Supreme Court has determined that Congress did not remove states' immunity in enacting section 1983. *Quern v. Jordan*, 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979); *see also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70–71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) (holding that states are not "persons" within the meaning of § 1983).

**8.** In *Parker v. Williams*, the Eleventh Circuit found that Macon County was liable for the acts of its sheriff, notwithstanding the fact that the court held that the sheriff was entitled to absolute immunity in his official capacity. *See Parker*, 862 F.2d at 1481. Here, Defendant Lowndes County acknowledged that the grant of absolute immunity to the sheriff in his official capacity does not automatically preclude a finding against the county for constitutional violations. Instead, Lowndes County argues that *Parker* should be limited by its facts and, therefore, only bears relevance in the context of jail personnel management. (Lowndes County Motion to Dismiss, p. 3). The court finds that *Parker's* holding should not be construed so narrowly.

The *Parker* court plainly stated, "[o]ne official may be a state official in the performance of some of his functions, and a county official in the performance of others." *Id.* at 1480. The Eleventh Circuit did not limit its holding to jail personnel management. Thus, under circumstances in which it appears that a sheriff is acting as a county official, then his actions may bring a county under constitutional scrutiny.

## II. Fort Deposit—Deliberate Indifference

■ The Eleventh Amendment does not shield Ft. Deposit from liability under § 1983, *Parker*, 862 F.2d at 1477, because local governing bodies may be sued directly under section 1983 for recovery of money damages caused by violations of established constitutional rights. *See e.g., Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A local governing body can be sued directly under section 1983 for monetary, declaratory or injunctive relief when the alleged unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body." *Monell*, 436 U.S. at 690, 98 S.Ct. at 2036. Furthermore, local governing bodies may be sued for constitutional deprivations emanating from "custom" although such a custom is not the product of formal adoption via the body's official decisionmaking regime.[9] *Id.*, 436 U.S. at 690–91, 98 S.Ct. at 2036.

■ In limited circumstances, a municipality's "failure to train" its officials can give rise to a viable § 1983 action. *City of Canton v. Harris*, 489 U.S. 378, 387, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). In *City of Canton*, the Court held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388, 109 S.Ct. at 1204. Therefore, to prevail under a section 1983 action

against Ft. Deposit, Plaintiffs must demonstrate that the alleged omission(s) and/or commissions resulted from a failure to adequately train the individual officers and that said failure to train their respective law enforcement officers evidences a "deliberate" or "conscious" decision not to so train. *See Id.*, 489 U.S. at 389, 109 S.Ct. at 1205. As Justice Brennan stated: "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made among various alternatives" by local policymakers. *Pembaur v. Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 1300–01, 89 L.Ed.2d 452 (1986) (plurality).

■ However, a section 1983 plaintiff cannot rely on a theory of respondeat superior to hold a city liable for the individual actions of its police officers. *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036; *Hearn v. City of Gainesville*, 688 F.2d 1328, 1334 (11th Cir.1982). Neither can a municipality be held liable "solely because it employs a tortfeasor." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir.1991) (quoting *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036). In order to recover against a city or municipality, a plaintiff must demonstrate that the alleged constitutional deprivation occurred pursuant to a custom or policy of the municipality. *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037; *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1503 (11th Cir.1985), *cert. denied*, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986); *Hearn*, 688 F.2d at 1334. In other words, there must be a causal connection between Ft. Deposit's responsibility and the Plaintiffs' purported injuries. *Parker*, 862 F.2d at 1477

---

The court need not belabor this point or address the issue further because Lowndes is no longer a party to this action. It is simply making clear that sheriffs in the state of Alabama may be state officials in some instances but county officials in others.

**9.** In *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the Court stated:

"Congress included customs and usages [in section 1983] because of the persistent and widespread discriminatory practices of state officials ... Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to

constitute a 'custom or usage' with the force of law."

*Adickes*, 398 U.S. at 167–68, 90 S.Ct. at 1613. As the United States Supreme Court has explained,

"[i]t would be a narrow conception of jurisprudence to confine the notion of 'laws' to what is found written on the statute books, and to disregard the gloss which life has written upon it. Settled state practice ... can establish what is state law ... Deeply embedded traditional ways of carrying out state policy ... are often tougher and truer law than the dead words of the written text."

*Nashville C. & St. Louis R. Co. v. Browning*, 310 U.S. 362, 369, 60 S.Ct. 968, 972, 84 L.Ed. 1254 (1940).

(citing *Monell,* 436 U.S. at 690, 98 S.Ct. at 2035).

■ Although not expressly articulated as such, the Plaintiffs claim that Ft. Deposit maintains a "custom" or "policy" which evidences a deliberate indifference to the welfare of those private citizens with whom members of its police force encounter. The Plaintiffs contend that after Hulett called them the day following the incident in question, they were falsely arrested and illegally detained for a period of twelve hours. This is the act upon which the Plaintiffs claim is somehow evident of Fort Deposit's deliberate indifference to the constitutional rights of those encountered by members of its police force. The court finds that the actions by a county official may not be employed to exact liability on a city when there is no proof that the latter ratified or authorized the actions of the former. Here, there is simply no proof that Ft. Deposit endorsed, encouraged or facilitated Sheriff Hulett's actions on September 3, 1992—the day in which the Plaintiffs were allegedly illegally detained. Neither have Plaintiffs demonstrated that the two entities routinely act in concert to deprive private citizens of their constitutionally guaranteed rights. Thus, Ft. Deposit's motion for summary judgment on Plaintiffs' section 1983 claim against it is due to be granted.

### III. Hulett and Head—Individual Capacity

■ Plaintiffs allege that the defendant officials violated section 1983, which accords private citizens recourse in the wake of constitutional deprivations carried out by individuals acting under the color of state law.[10] A section 1983 claim is predicated on two indispensable elements:

first, the conduct complained of must have been committed by a person acting under

state law; second, this conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or the laws of the United States.

*Whitehorn v. Harrelson,* 758 F.2d 1416, 1419 (11th Cir.1985) (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981)). It is undisputed that former Chief of Police Head and Sheriff Hulett were acting under color of state law at all material times. However, Hulett claims that he is entitled to qualified immunity as a matter of law because the actions complained of by Ray and Demetris Dunklin fall within his discretionary authority and the actions of which Plaintiffs complain were not clear federal constitutional or statutory violations on or about September 2, 1992. Head, on the other hand, contends that because he was not involved in the alleged unlawful detention, he cannot be held liable for any constitutional violations arising therefrom.

The United States Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Rich v. Dollar,* 841 F.2d 1558, 1563 (11th Cir.1988) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)), *see also Tindal v. Montgomery County Commission,* 32 F.3d 1535, 1539 (11th Cir.1994). According to the Supreme Court in *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley,* 475 U.S. at 341, 106 S.Ct. at 1096, *see also Barts v. Joyner,* 865 F.2d 1187, 1190 (11th Cir.1989) ("[t]he *Harlow* decision sets up a bright-line test that is a powerful constraint on causes of action under section 1983.").[11]

---

10. Section 1983 provides in relevant part that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured ..."

42 U.S.C. § 1983.

11. As articulated by the Eleventh Circuit:

While qualified immunity almost always applies in damage claims against government actors in their individual capacities, the defense is a narrow one, leaving plaintiffs other avenues of relief. Plaintiffs remain free (subject to Eleventh Amendment constraints) to

The United States Eleventh Circuit Court of Appeals has established the following test when determining whether a government official is entitled to qualified immunity:

1. First, the official must prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."

2. Should the defendant satisfy his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on part of the defendant official. The plaintiff satisfies this burden by sufficiently demonstrating that the official's actions "violated clearly established constitutional law."

*Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983).

■ An official satisfies the first element of the two-prong *Zeigler* test and, shifts the burden to the plaintiff by demonstrating ".... 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" *Rich,* 841 F.2d at 1563–64 (quoting *Barker v. Norman,* 651 F.2d 1107, 1121 (5th Cir.1981)).[12] Therefore, logically speaking, an officer violating official policy may not benefit from the qualified immunity defense.

■ Here, Plaintiffs do not contend that Hulett and Head were not performing discretionary functions at all relevant times. Therefore, the court now shifts its focus to the second prong of the *Zeigler* analysis to determine whether the purported act of Hulett in detaining Plaintiffs for an alleged twelve hours violated Plaintiffs' Fourth Amendment rights, as made applicable to the States under the Fourteenth Amendment. To begin, the court finds that Plaintiff's constitutional law claim against Head in his individual capacity is not viable because Head was not privy to the activity giving rise to the purported deprivation. By Plaintiffs own allegation, Defendant Hulett asked the Plain-

tiffs "to come in for questioning" on the morning following the arson and "illegally detained them in violation of the fourth amendment to the Constitution of the United States." (Pl's.Complaint, pp. 3–4). Furthermore, Plaintiffs do not contend that Head asked them questions during the purported detention. Because Head was not involved in this exchange, to find that he is in violation of the United States Constitution is a *non sequitur.*

In order to defeat Hulett's claim for qualified immunity and, thereby, survive his motion for summary judgment for claims against him in his individual capacity, Plaintiffs must demonstrate that Hulett's actions on September 3, 1992, violated clearly established constitutional or statutory rights of which a reasonable officer would have known. *See Barts,* 865 F.2d at 1190 (citing *Mitchell v. Forsyth,* 472 U.S. 511, 527–28, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985)) (once the qualified immunity defense is raised, the plaintiff bears the burden of demonstrating that the federal "rights" allegedly violated were "clearly established"). In plain terms, Hulett is entitled to qualified immunity if the Plaintiffs fail to produce sufficient evidence that, when viewed in the light most favorable to them, Hulett violated their clearly established Fourteenth Amendment right to be free of illegal detention of which a reasonable officer would have been aware. *Belcher v. City of Foley,* 30 F.3d 1390, 1395 (11th Cir. 1994).

■ In order for a right to be clearly established, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand what he is doing is wrong." *Anderson v. Creighton,* 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Furthermore, the unlawfulness of the act must be apparent in light of pre-existing law. *See id.* The Eleventh Circuit has stated: "[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defen-

---

seek money damages against government actors in their official capacity. Plaintiffs may also seek injunctive relief.
*Lassiter v. Alabama A & M University,* 28 F.3d 1146, 1149 n. 2 (11th Cir.1994).

**12.** The United States Eleventh Circuit Court of Appeals has adopted as binding precedent the decisions of the former Fifth Circuit rendered before October 1, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc* ).

dant." *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993). "For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law." *Lassiter v. Alabama A & M University,* 28 F.3d 1146, 1149 (11th Cir.1994) (citing *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039).

Here, Plaintiffs contend that by placing them in detention for approximately twelve hours against their will, Hulett infringed their Fourth Amendment guarantees. Plaintiffs also aver that they were released without their fingerprints being taken, bail being posted or paperwork accomplished. (Pls.' Resp. in Opp. to Hulett's Mot. for Sum. Judg.). However, both plaintiffs admit that they were questioned regarding the occurrence at the former mayor's home. (R. Dunklin aff.; D. Dunklin aff.).

■ Deputy State Fire Marshal, Edward Paulk (Deputy "Paulk"), testifies, by affidavit, that he was called to the arson scene at approximately 2:30 a.m. on September 2, 1992. He states that he investigated the scene and returned to the Ft. Deposit Police Station with Chief Head and Sheriff Hulett at approximately 5:00 a.m. As part of his investigation, he requested to speak to Ray and Demetris Dunklin after learning that Ray was serving as Chief Head's informant and Demetris was his witness. Deputy Paulk asserts that "as a formality to any investigation," he read the Plaintiffs their Miranda rights. (Paulk aff., p. 2). Afterwards, he questioned the Plaintiffs. (*Id.*). Deputy Paulk testifies that Sheriff Hulett was present through most of the questioning. At approximately 6:55 a.m., Sheriff Hulett was called from the room. According to Paulk, Hulett returned shortly thereafter and informed him that a body had been found near the scene of the arson.

Hulett claims that at that point he had to make a determination about what to do with the Dunklins. (Hulett Mot. for Sum.Judg., p. 17). According to Hulett, he detained the Plaintiffs for their safety because good rea-

son existed to believe that Elbert Lee Means ("Means"), a political opponent of Mayor Norman, was behind the arson because he had recently lost the mayoral race to white mayoral candidate Paul Craig. (*Id.*). The two men involved in the arson were related to Means—Stephon Davidson is Means' son and Raymond Means was Means' nephew. (*Id.*) Sheriff Hulett notes that the Plaintiffs acted very nervous while being questioned. (*Id.* at 17–18). Hulett claims that Means had a violent streak and he felt that Means would probably seek vengeance on anyone who could link him to the arson; therefore, Hulett felt that he was acting prudently in detaining Plaintiffs.

Sheriff Hulett's contention is corroborated by Deputy Paulk who states that the Plaintiffs expressed concern for their safety once Sheriff Hulett divulged the news concerning the discovery of the dead body. (Paulk aff., p. 3). The two men were then placed in a cell for their own protection. Deputy Paulk also testifies that he and Sheriff left the police station to investigate and preserve the crime scene until the Alabama Bureau of Investigations ("ABI") arrived. (*Id.*). Following the arrival of the ABI, Deputy Paulk and Sheriff Hulett returned to the police station to continue questioning Ray and Demetris, who were released after questioning. Deputy Paulk testifies further that Plaintiffs were not detained any longer than necessary considering that questioning regarding the arson was interrupted by a murder investigation. (*Id.*).

■ Hulett also asserts that even assuming that the act of which Plaintiffs complain amount to an arrest, probable cause existed to support such an "arrest." In the absence of probable cause, warrantless arrests violate the Constitution and form the basis for § 1983. *See Herren v. Bowyer,* 850 F.2d 1543, 1547 (11th Cir.1988); *Reeves v. City of Jackson, Mississippi,* 608 F.2d 644, 651 (5th Cir.1979). However, the existence of probable cause is an absolute bar to § 1983 action for false arrest. *See Howell v. Tanner,* 650 F.2d 610, 614 (5th Cir.1981). The Eleventh Circuit has articulated the following explanation of probable cause for arrest:

"Probable cause [to arrest] exists where 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or will be committed." *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949) (citing *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)); *Wilson v. Attaway,* 757 F.2d 1227, 1235 (11th Cir.1985). Probable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy information,' *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964), and 'probable cause must be judged not with the clinical detachment but with a common sense view to the realities of normal life.' *Wilson,* 757 F.2d at 1235. When the facts are not in dispute, whether probable cause is a question of law, and summary judgment is appropriate. *See White v. Pierce County,* 797 F.2d 812, 815 (9th Cir.1986); *Wille v. Raymond,* 487 So.2d 1211, 1214 (Fla.App. 1986).

*Marx v. Gumbinner,* 905 F.2d 1503, 1506 (11th Cir.1990).

In the recent decision of *Rodgers v. Horsley,* 39 F.3d 308 (11th Cir.1994), the United States Eleventh Circuit Court of Appeals stated that "the question . . . . in all qualified immunity cases, is fact specific. . . ." *Horsley,* 39 F.3d at 311. In *Horsley,* an involuntarily civilly committed patient who was allegedly raped at a hospital brought a section 1983 action against the director of the hospital and chief administrator of the admissions unit of the hospital for failure to provide her with adequate security and failure to adequately train and supervise subordinates. Mona Rodgers, the plaintiff in *Horsley,* was left alone for fifteen minutes in the hospital's smoking room, during which time she was allegedly raped. Mona Rodgers submitted evidence that several incidents of sexual conduct between patients had been reported, but the occurrences were rare. Rodgers was on

"close watch status" when the alleged rape occurred.

The *Horsley* court stated that the question was not whether, in general, involuntarily committed patients have a legal interest under Amendment Fourteen to safe conditions, but rather,

" . . . . in May 1991, was it clearly established in this circuit that it was unconstitutional for a mental institution to fail to supervise a patient for fifteen minutes in the smoking room, when she was on close watch status for a health problem, when the institution had some history of some "sexual contact" involving patients other than plaintiff but no history of rape in the past twelve years, where a previous patient who was to be similarly monitored disappeared, apparently escaped through a bathroom window, and fell to her death . . . ?"

*Horsley,* 39 F.3d at 311. The *Horsley* court answered the foregoing question in the negative and held that the defendants were entitled to qualified immunity.[13] *Id.*

Plaintiffs point to no United States Supreme Court, former Fifth Circuit or Eleventh Circuit precedent, in place at the time of Plaintiffs' purported injuries, that a law enforcement officer violates a person's Fourth Amendment rights when he or she detains a person, claiming to have been an informant, for said person's safety. Moreover, the court finds that Hulett has articulated sufficient facts to establish probable cause to detain Plaintiffs for questioning regarding their roles in the arson on or about September 2, 1992. Sheriff Hulett submits several unrebutted assertions which demonstrate that the Plaintiffs' involvement in the arson of former Mayor Norman's house was not insubstantial.

On the night of the alleged unlawful detention, Sheriff Hulett and other officers had information that the Plaintiffs had ridden to the crime scene with the arsonists; that Ray provided the money to pay for the gasoline used in setting the resident ablaze; that

---

**13.** In *Horsley,* Mona Rodgers relied on *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), which held that involuntarily committed patients had a right to reasonably safe conditions of confinement.

Demetris purchased the gasoline; that both Plaintiffs were nearby when the match was struck to ignite the fire; and that the Plaintiffs fled the scene of the crime when law enforcement officers appeared. As a result, Hulett questioned Plaintiff regarding the crime. (Hulett Mot. for Sum.Judg., p. 17).

■■■ The court finds that the Plaintiffs have not carried their burden of demonstrating that Hulett's conduct on or about September 3, 1992, violated clearly established constitutional or statutory law. The court notes with emphasis that simply because the Plaintiffs were informants for the Ft. Deposit Police Department, they do not enjoy investigatory immunity, especially when, as here, questions arise concerning their participation in a crime. Furthermore, just because a jury ultimately found that the Plaintiffs were not guilty of second degree arson does not necessarily mean that, at the time of the alleged wrongful detention, Sheriff Hulett executed his duties in conscious disregard of Plaintiffs' constitutional rights to be free of unlawful detention.

### Conclusion

In accordance with the foregoing discussion and analysis, the court finds that Defendants' motions for summary judgment on Plaintiffs' federal law causes of action are due to be granted. Furthermore, the court finds that Plaintiffs' state law causes of action are due to be dismissed *without prejudice.*

A judgment in accordance with this memorandum opinion shall be entered separately.