237 F.3d 1101 (9th Cir. 2001)
 MATILDA MABE, Plaintiff-Appellant,
v.
SAN BERNARDINO COUNTY, DEPARTMENT OF PUBLIC SOCIAL SERVICES; KAREN PERRY; JEFF LUTHER; BRENDA WALKER; KATHY MCBRIDE; DAN SHOREE; CHUCK MCATEE; STEPHANIE RUMPLER, Defendants-Appellees.
 No. 98-56561
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted October 10, 2000
Filed January 24, 2001
 
 [Copyrighted Material Omitted][Copyrighted Material Omitted]
 Brett J. Williamson, Peter R. Afrasiabi, Christopher W. Arledge, O'Melveny & Myers LLP, Newport Beach, California, for the plaintiff-appellant.
 Dennis E. Wagner, Deputy County Counsel; Regina A. Cole- man, Deputy County Counsel; and Alan K. Marks, County Counsel, San Bernardino, California, for the defendants- appellees County of San Bernardino, Karen Perry, Jeff Luther, Kathy McBride, Dan Shoree and Chuck McAtee.
 Janet Stouder-Brandon, San Bernardino, California, for defendant-appellee Stephanie Rumpler.
 Appeal from the United States District Court for the Central District of California Robert J. Timlin, District Judge, Presiding. D.C. No.CV-96-00325-RT
 Before: Robert Boochever, A. Wallace Tashima and Richard C. Tallman, Circuit Judges.
 TALLMAN, Circuit Judge:
 
 
 1
 We review the propriety of actions taken during the course of a child abuse investigation and subsequent dependency proceedings. Matilda Mabe sued, on various state and federal grounds, the social worker conducting the investigation, certain supervisors and colleagues, the county agency that employs them, and two individuals who later provided foster care to Mabe's minor daughter. The district court granted summary judgment in favor of all defendants on all claims. Mabe argues that Appellees are liable for damages under 42 U.S.C. 1983 for their actions in removing Mabe's daughter (MD[1]) from her home without a warrant and subsequently placing her in foster care. We affirm in part and reverse and remand in part because there is a material question of fact regarding the liability of the investigating county social worker.
 
 
 2
 I. Background.
 
 
 3
 On July 19, 1995, the San Bernardino County Sheriff's Department received a call from Stephanie Rumpler that her younger sister, MD, at the time a 14-year-old minor, had been molested by her stepfather, Mabe's husband. MD reported that the stepfather had touched her breasts and crotch area through her clothing at night in her bedroom and that this had been occurring every other night for the past two or three months. At the time of the initial telephonic report to police, MD was visiting her sister in Northern California. A few days later, MD returned to the home shared by Mabe and the step- father in San Bernardino County.
 
 
 4
 The deputy sheriff who took MD's complaint contacted Mabe, who responded that MD made up stories and embel- lished facts. Next, the deputy spoke to the stepfather, who stated that MD was lying. No criminal charges were ever filed against the stepfather.
 
 
 5
 Appellee Karen Perry, a San Bernardino County social worker with the Department of Social Services, was assigned the case. Perry spoke with the deputy sheriff regarding his conversations with Rumpler, MD, Mabe, and the stepfather. Perry learned that the stepfather had also allegedly "mooned" MD on some prior occasion when he exposed his buttocks to her.
 
 
 6
 Nearly one month after the initial telephonic report was made, on August 17, 1995, Perry interviewed both Mabe and MD at their home. According to Perry, Mabe claimed that no abuse had occurred and that the "mooning" incident by the stepfather was MD's fault because she had done it to him first. MD told Perry that no further acts had occurred since her return to their residence after the initial police report was made. Perry maintains that at the time of this interview she believed that there was child abuse in the home, that there was pressure being exerted on MD in retaliation for reporting the touching to authorities, and that the stepfather still had unrestricted access to MD. Nonetheless, Perry decided to leave MD in the home shared by Mabe, the stepfather, and MD. MD testified on deposition that during this interview Perry told MD that she would see whether she needed to remove MD from the home.
 
 
 7
 On August 21, 1995, four days after leaving MD in the home, Perry presented her report of MD's situation to an agency case review committee for evaluation. The committee recommended that MD be placed out of the home and that a California Welfare and Institutions Code 300 child dependency petition be filed with the juvenile court. After receiving this recommendation, Perry and a sheriff's deputy went to Mabe's home later that day without a warrant and removed MD.
 
 
 8
 Both sides agree that Mabe did not consent to the officials' warrantless entry into her home. Nor did Perry give advance notice to Mabe that she would return to the home at this time. Mabe strongly objected to MD's removal from the home. Perry alleges that Mabe was very upset, allegedly harassing MD during the removal. Mabe insists that the stepfather told Perry that he was willing to leave the house if necessary to allow MD to remain in her mother's home.
 
 
 9
 The California juvenile court later found that there was substantial danger to the physical well-being of MD and that there were no reasonable services that would have allowed for her to remain safely in her mother's home. MD was initially placed in foster care and then the court gave temporary custody to Rumpler. MD's placement was monitored by Perry and other social workers for four years until dependency proceedings were dismissed when MD turned 18.
 
 
 10
 Mabe's lawsuit seeks damages from Perry, certain supervisors and colleagues, San Bernardino County, MD's initial fos- ter mother, and Rumpler. The district court dismissed several of the counts alleged in the original complaint against some of the defendants for failure to state a claim. Mabe's second amended complaint contained twenty-six causes of action including federal civil rights claims and state law claims. The County Appellees and Rumpler separately filed motions for summary judgment claiming immunity. A magistrate judge recommended that the defendants' motions be granted and the action be dismissed in its entirety. The district judge granted summary judgment to all defendants on all claims based in part upon a finding that the defendants were entitled to immunity. Mabe appeals.
 
 
 11
 II. Discussion.
 
 
 12
 A. Scope and Standards of Review.
 
 
 13
 We review the district court's grant of summary judgment de novo. See Balint v. Carson City, 180 F.3d 1047, 1050 (9th Cir. 1999) (en banc). The type of immunity to which a public official is entitled is a question of law also reviewed de novo. See Greater Los Angeles Council on Deafness, Inc. v. Zolin, 812 F.2d 1103 (9th Cir. 1987).
 
 
 14
 Whether governing law was clearly established is a legal determination reviewed de novo. Mitchell v. Forsyth, 472 U.S. 511, 528 (1985) (qualified immunity). Whether specific facts constitute a violation of established law is a legal determination reviewed de novo. Armendariz v. Penman , 75 F.3d 1311, 1317 (9th Cir. 1996) (en banc) (assuming facts in light most favorable to nonmoving party). When examining the validity of a warrantless search and seizure, exigent circum- stances present a mixed question of law and fact reviewed de novo. United States v. Hudson, 100 F.3d 1409, 1417 (9th Cir. 1996).
 
 
 15
 B. Merits.
 
 
 16
 1. Liability of the Individual Appellees Under Section 1983.
 
 
 17
 Section 1983 creates a cause of action against any person who, acting under color of state law, violates the constitutional rights of another person. See 42 U.S.C. 1983. The individual appellees say that either they did not personally cause Mabe's alleged constitutional violations or that they are immune from suit for their official actions, which precludes Mabe's recovery under section 1983.
 
 
 18
 When deciding whether a public official is immune from liability for acts performed in her official capacity, qualified immunity is the general rule and absolute immunity the exceptional case. See Zolin, 812 F.2d at 1108 (citing Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982)). It is well-settled that the immunity to which a public official is entitled depends not on the official's title or agency, but on the nature of the function that the person was performing when taking the actions that provoked the lawsuit. See id.
 
 
 19
 Mabe's claim against the individual appellees involves official conduct encompassing two different functions -- conduct relating to the removal of MD from her home and conduct involving the post-removal dependency proceedings. Because the immunity inquiry under section 1983 is different for the two governmental functions performed, we address each separately.
 
 
 20
 a. The Removal of MD. i. Liability of Perry for the Removal of MD.
 
 
 21
 Mabe argues that social worker Perry is not entitled to qualified immunity because her conduct in removing MD without a warrant was unlawful under the Constitution. Qualified immunity shields a government official from liability for civil damages if (1) the law governing the official's conduct was clearly established; and (2) under that law, the official objectively could have believed that her conduct was lawful. See Ram v. Rubin, 118 F.3d 1306, 1310 (9th Cir. 1997) (involving the qualified immunity of a social worker and a police officer).
 
 
 22
 Government officials are required to obtain prior judicial authorization before intruding on a parent's custody of her child unless they possess information at the time of the seizure that establishes "reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury." Wallis v. Spencer, 202 F.3d 1126, 1138 (9th Cir. 2000) (citing Mincey v. Arizona, 437 U.S. 385, 393 (1978)).
 
 
 23
 The first prong of the qualified immunity test focuses on whether the law governing Perry's removal of MD from the Mabe home was clearly established. The constitutional right of parents and children to live together without govern- mental interference is well established. See Santosky v. Kramer, 455 U.S. 745, 753 (1982). The Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies. See Stanley v. Illinois, 405 U.S. 645, 651 (1972); Ram, 118 F.3d at 1310 (9th Cir. 1997) (holding that in 1993"it was clear that a parent had a constitutionally protected right to the care and custody of his children and that he could not be summarily deprived of that custody without notice and a hearing except when the children were in imminent danger").
 
 
 24
 The second prong of the qualified immunity test focuses on whether a reasonable official could have believed her conduct was lawful. See id. Whether Perry could have believed that removing MD under the facts of this case was lawful depends on whether a reasonable social worker could have believed that exigent circumstances existed on August 21, 1995, sufficient to override the warrant requirement. See White v. Pierce County, 797 F.2d 812, 815 (9th Cir. 1986) (citing Payton v. New York, 445 U.S. 573, 588-90 (1980)). Two relevant cases involving the availability of qualified immunity based on claims of exigency for officials conducting child abuse investigations bracket the facts in this case.
 
 
 25
 In White, exigent circumstances excused the need for a warrant. We concluded that the "deputies had probable cause to believe the child had been abused and that the child would be injured or could not be taken into custody if it were first necessary to obtain a court order." Id. (applying a Washington state child abuse statute directing immediate seizure if officers had probable cause to suspect imminent danger). Accord- ingly, we reversed the district court's denial of defendant's motion for summary judgment upon a finding of qualified immunity. Id.
 
 
 26
 An opposite result was reached in Calabretta v. Floyd, 189 F.3d 808 (9th Cir. 1999). In Calabretta, the summary judgment motion filed by the social worker and police officer, on the grounds of qualified immunity, was denied by the district court. We affirmed because a reasonable government official would have known that exigent circumstances justifying war- rantless entry into the parents' home did not exist; that con- sent or a warrant was required for entry; and that qualified immunity was not available with respect to the coerced strip search of a three-year-old child. See id.
 
 
 27
 The social worker in Calabretta, investigating allegations of child abuse, went to the residence and spoke to the mother. Id. at 810-11. Ten days later, the social worker returned to the residence with a police officer and made a coerced, warrant- less entry into the house. Id. at 811. The social worker also coerced the mother to pull down the pants of one of the children so the social worker could check for signs of abuse. Id. at 811-12. Under these facts, the Calabretta court, citing White, held that the government officials were not entitled to qualified immunity because there was no showing of imminent danger to the children. Id. at 813, nn. 9 & 12.
 
 
 28
 The facts in this case appear to fall somewhere in between Calabretta and White. The record shows that the mother, Mabe, was hostile to the social worker, Perry, and to her daughter, MD, during Perry's investigation, which is arguably similar to the father's hostile behavior in White, giving rise to a reasonable fear that the child was in imminent physical danger. However, in White, the officers had a reasonable fear that because the father, the potential abuser, was hostile about the investigation, the child would be harmed in any time it would take to obtain a warrant. See White, 797 F.2d at 815. In contrast, Perry's concerns that Mabe was hostile to the veracity of MD's allegations against her husband are not directly related to how he himself might react when faced with MD's allegations of sexual abuse.
 
 
 29
 Both Calabretta and White are distinguishable from this case because the allegations of abuse being investigated in those cases were not provided by the victim or people with personal knowledge of any abuse. In this case, Perry had the victim's report of abuse. This is significantly more compelling evidence to support the social worker's reasonable belief that abuse had occurred and that the child was still in danger of future harm than in Calabretta or in White, where a neigh- bor's report formed the basis of suspicion of child abuse.
 
 
 30
 Nonetheless, imminent danger of future harm is required to show exigency. Several facts, viewed in the light most favorable to Mabe, undermine a reasonable belief of exigency here. First, and most importantly, Perry opted to leave MD in the residence after interviewing MD and Mabe about the alleged molestation. Perry told MD at the end of the inter- view on August 17, 1995, that she would see if MD needed to be removed from the home. This demonstrates Perry's intent to delay the removal, which raises a serious question about Perry's reasonable belief that MD was in imminent danger on August 21, 1995, similar to the delay in Calabretta.
 
 
 31
 Second, Perry concedes that the improper touching had not been recurring since MD returned home over a month after the initial police report was made. Unlike White, this case does not present the concern that the child would be concealed or further abused during the time it would take to get a warrant because such retribution had not happened to MD since her return home after Mabe and the stepfather were both told that a police report had been filed.
 
 
 32
 Third, the type of abuse here is qualitatively different than that under investigation in both White and Calabretta. Here, the allegations were not of physical beatings that could happen at any time of the day. Although the conduct by the stepfather was clearly inappropriate, it did not involve violence or penetration and the only time it had taken place was at night when MD was in her bedroom. Assuming that Perry could obtain a warrant[2] the same day as the case review committee recommended that MD be removed, it is difficult to understand how the further delay of a few hours necessary to obtain the warrant would have put MD in imminent danger of serious physical injury.
 
 
 33
 Whether reasonable cause to believe exigent circumstances existed in a given situation, "and the related questions, are all questions of fact to be determined by a jury." Wallis v. Spencer, 202 F.3d 1126, 1138 (9th Cir. 2000) (citing McKenzie v. Lamb, 738 F.2d 1005, 1008 (9th Cir. 1984)). Accordingly, "[s]ummary judgment in favor of the defendants is improper unless, viewing the evidence in the light most favorable to the plaintiffs, it is clear that no reasonable jury could conclude that the plaintiffs' constitutional rights were violated." Id. Under this standard, we found summary judgment to be improper in Wallis in part because "a material question of fact exists regarding whether . . . there was reasonable cause to believe, on the basis of the information in the possession of the . . . police officer, that the . . . children faced an immediate threat of serious physical injury or death." Id.
 
 
 34
 Similarly, there exists a question of material fact here whether a reasonable social worker could have believed that her conduct was lawful because it is unclear on summary judgment whether MD faced an immediate threat of serious physical injury. The district court's grant of summary judgment in favor of Perry was erroneous because, viewing the exigency evidence in the light most favorable to Mabe, a reasonable jury could conclude that Mabe's constitutional rights were violated by Perry's warrantless removal of MD. See id.
 
 
 35
 ii. Liability of the Supervisor for the Removal of MD.
 
 
 36
 Mabe also sued Perry's supervisor, Jeff Luther, for the warrantless removal of MD from her home. However, no evidence was presented to show a causal connection between any personal conduct by Luther and the alleged constitutional violation. The Supreme Court has concluded that in enacting section 1983 Congress did not intend to "impose liability vicariously on [employers or supervisors] solely on the basis of the existence of an employer-employee relationship with atortfeasor." Palmer v. Sanderson, 9 F.3d 1433, 1438 (9th Cir. 1993) (quoting Monell v. Department of Soc. Servs. of New York, 436 U.S. 658, 692 (1978)). Therefore, the conduct of Perry cannot be imputed to Luther. We affirm the district court's grant of summary judgment on this claim.
 
 
 37
 b. The Dependency Proceedings.
 
 
 38
 Separate from Mabe's complaint about the warrantless removal of MD from her home, Mabe argues generally that the County's social workers did not conduct the investigation properly, were allowed to submit false evidence during the juvenile court proceedings, and interfered with her custody rights. The district court dismissed some of these counts for failure to state a claim and properly granted summary judgment on the remaining counts because social workers are entitled to absolute immunity for the initiation and pursuit of dependency proceedings, including their testimony offered in such proceedings. See Meyers v. Contra Costa County Dep't of Soc. Servs., 812 F.2d 1154, 1158-59 (9th Cir. 1987). Sum- mary judgment was proper on Mabe's false evidence allegations because she failed to offer any evidence of false or perjured testimony.
 
 
 39
 Moreover, social workers "enjoy absolute, quasi-judicial immunity when making post-adjudication custody decisions pursuant to a valid court order." Babcock v. Tyler, 884 F.2d 497, 503 (9th Cir. 1989) (holding social workers entitled to absolute immunity from a claim that they erred in placing minor dependents in foster home where the minors were later sexually abused).
 
 
 40
 Even if the action against Perry entitles Mabe to damages under a theory of warrantless removal without exigent circumstances, summary judgment is affirmed for the subsequent social workers and court-appointed caretakers[3] who participated in MD's dependency proceedings because their liability cannot be imputed solely by virtue of their relation- ship to Perry. See Palmer, 9 F.3d at 1438.
 
 
 41
 We affirm the district court's dismissal and grant of summary judgment on the portion of Mabe's case that involves the dependency proceedings claims and the post-removal custody decisions of the juvenile court.
 
 
 42
 c. Scope of Removal and Placement in Light of Exigency.
 
 
 43
 Mabe argues that the extent of the intrusion, resulting in the removal of MD from the home and placement in foster care for an indefinite period, was improper under law. We have held that exigency is a "very limited exception " to the warrant rule and simply "because some intrusion on a child's protected privacy and security interests may be reasonable does not mean that any intrusion is." Wallis, 202 F.3d at 1140.
 
 
 44
 In Wallis, the threat of future physical abuse and past sexual abuse on the Wallis children were all attributed to the father. We noted that there was "no evidence that the children could not have been taken with their mother to a shelter, or placed under some other form of protective custody with her until . . . some later date." Id. at 1140. We concluded that there was a "genuine issue of material fact as to whether the emergency continued to exist for more than the brief day or two following the time of the children's seizure " and whether the children could have been taken out of the home with their mother. Id.
 
 
 45
 Here, MD's allegations of abuse were only attributed to the stepfather, Mabe's husband, yet MD was removed from the home. Furthermore, Mabe says that her husband told Perry he would move out of the house if that was necessary to have MD remain in the home. If the exigency that justified MD's removal was the stepfather's access to her in the residence, then his departure or Mabe's and MD's detention would have been a less drastic step to protect MD from immediate harm.
 
 
 46
 Perry thought that Mabe was not protecting MD in light of how she reacted to MD's report of the stepfather's alleged misconduct. Compare Wallis, 202 F.3d at 1140. Mabe did not believe MD's allegations that the abuse had occurred or that there was a threat that such abuse would occur again in the future. Perry says Mabe was verbally abusive of MD during the removal, harassing MD within inches of her face. Perry's impressions constitute supporting evidence, unlike Wallis, that removal from the mother was reasonably necessary as well to protect MD.
 
 
 47
 The day after MD's removal from the Mabe home, a Juvenile Dependency Petition was filed with the San Bernardino County Juvenile Court. The following day the juvenile court held a hearing attended by Mabe. The court found that a prima facie case was established for MD's detention out of home. The court also found that the "lack of pre-placement preventive efforts was reasonable" and "continuation in the parental home is contrary to the welfare of the minor; no means to protect without removal." The record demonstrates that attempts were made to resolve the conflict between MD and her mother and her stepfather through family reunification procedures, but an impasse developed in the family when MD refused to recant the allegations and Mabe and her husband refused to admit that any abuse had occurred.
 
 
 48
 The juvenile court's findings are not relevant to whether a sufficient exigency existed at the time of the removal to justify the warrantless action because such an inquiry is to be based on the information that Perry had at the time. However, those findings certainly buttress the conclusion that MD's removal from the Mabe residence and permanent placement outside the home were justified in light of the situation. The juvenile court ordered the continued separation of Mabe from MD. Mabe opted not to appeal the juvenile court's jurisdiction and disposition orders that required MD's four-year placement outside of Mabe's home. Summary judgment on this claim is affirmed.
 
 
 49
 2. Liability of the County Under Section 1983.
 
 
 50
 Mabe argues that her claim against the County for the warrantless removal of MD should not have been dismissed. A municipality can be sued for "constitutional deprivations visited pursuant to governmental custom." Monell , 436 U.S. at 690; Wallis, 202 F.3d at 1136. To establish liability, Mabe must show that (1) she was deprived of a constitutional right; (2) the County had a policy; (3) the policy amounted to a deliberate indifference to her constitutional right; and (4) the policy was the "moving force behind the constitutional violation." Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996).
 
 
 51
 Under this standard, the district court's grant of summary judgment in favor of the County must be affirmed. Mabe adduced no evidence that the County had a policy that both amounted to deliberate indifference to Mabe's constittional rights and was the moving force behind a violation of those rights. Even assuming that the County had a policy of delaying the removal decision in a child abuse investigation so as to allow the social worker to present the matter to a case review committee, there is no evidence that the County had a further policy of thereafter conducting warrantless removals in the absence of exigent circumstances, or any other policy of a sort that could give rise to liability. Because Mabe presented no evidence of an unconstitutional custom or policy to support her claim against the County, summary judgment in favor of the County is affirmed.
 
 
 52
 3. Remaining Claims.
 
 
 53
 a. Wrongful Search and Seizure of Property.
 
 
 54
 There is no evidence that Mabe's Fourth Amendment rights were violated by any of her property being seized from her home by Defendants-Appellees. Mabe has no standing to claim a violation of MD's Fourth Amendment rights. See United States v. Taketa, 923 F.2d 665, 670 (9th Cir. 1991) (holding that Fourth Amendment rights are personal and may not be asserted vicariously). Accordingly, summary judgment on this claim is affirmed.
 
 
 55
 b. State Claims.
 
 
 56
 As a condition precedent to suit against a public entity, the California Tort Claims Act (CTCA) requires "the timely pre- sentation of a written claim and the rejection of the claim in whole or in part." Mangold v. California Pub. Util. Comm'n, 67 F.3d 1470 (9th Cir. 1995) (citing Snipes v. City of Bakers- field, 145 Cal. App. 3d 861 (1983)). The magistrate judge found that Mabe's state claims were precluded under the CTCA because the relevant "factual allegations . . . were not set forth in the claim filed with the County."
 
 
 57
 However, Mabe's written claim, which was submitted on a form provided by the County, appears to contain several relevant allegations including: names, dates, details and causes of action based upon state grounds, violation of statutes, and intentional and negligent infliction of emotional distress. These details satisfy the threshold notice requirement of claim submission. See Cal. Gov't Code 910, 910.4. While Mabe's CTCA submission contains duplicative claims addressed elsewhere in this opinion,[4] at least two of these claims sound in state law, which are also presented in Mabe's opening brief on appeal -- statutory violations and emotional distress.
 
 
 58
 Summary judgment was also granted on the state law claims because the County is not specifically listed on the claim form. However, the document itself is entitled "Claim Against County of San Bernardino." Simply because Mabe completed the form by responding to the question asking her to identify the "public officers or employees causing injury" does not entitle the County to summary judgment under the guise of failure to satisfy the CTCA by omitting to name the County. Accordingly, summary judgment for the County based upon failure to comply with the CTCA is reversed and remanded for consideration on the merits.
 
 
 59
 c. Access to School Records.
 
 
 60
 Mabe says she was denied access to her daughter's school records by defendants' actions. Mabe adduced no evidence implicating a County custom. Nor was any evidence presented to suggest that such a custom caused Mabe injury. Summary judgment for the County on this issue is affirmed. Summary judgment on the same claim against the individuals is affirmed because they are entitled to absolute immunity for their actions conducted pursuant to the dependency proceedings. See Babcock, 884 F.2d at 503; Meyers, 812 F.2d at 1159.
 
 
 61
 d. Discovery Requests.
 
 
 62
 We review discovery rulings for abuse of discretion. See Ingham v. United States, 167 F.3d 1240, 1246 (9th Cir. 1999). Mabe argues that the magistrate judge should have allowed her access to MD's high school records and the County's records. However, Mabe failed to comply with a local rule requiring a joint stipulation with the County and failed to comply with Fed. R. Civ. P. 45(a)(2) which requires that the subpoena issue from the federal district in which the school is located. The magistrate judge did not abuse her discretion in denying the requests. See Exxon Shipping Co. v. Department of Interior, 34 F.3d 774, 779-80 (9th Cir. 1994).
 
 
 63
 e. New Cause of Action.
 
 
 64
 In her opening brief on appeal, Mabe alleges a new cause of action, not contained in her second amended complaint, that Rumpler, who subsequent to the removal took care of MD, mismanaged MD's social security benefits. When a claim is not raised below, it is not considered on appeal. See Crawford v. Lungren, 96 F.3d 380, 389 n.6 (9th Cir. 1996) (holding that newly minted causes of action are not considered on appeal because the complaint contained only passing references to them). Since Mabe did not sue on behalf of MD for MD's damages, this claim is without merit. Mabe's claim that appellants damaged MD by causing her to suffer psycho- logical damage similarly fails as a matter of law.
 
 
 65
 III. Conclusion.
 
 
 66
 A material issue of fact exists regarding whether there was reasonable cause to believe, on the basis of the information in the possession of Karen Perry at the time of removal, that MD faced an imminent danger of serious bodily injury sufficient to justify a warrantless entry to Mabe's home and the seizure of her daughter. We reverse and remand this issue for trial.
 
 
 67
 The dismissal of the supplemental state law claims against the County is reversed and remanded since the district court dismissed them for an impermissible reason (failure to com- ply with the CTCA). We express no opinion as to the merits of those reinstated claims.
 
 
 68
 We affirm the district court's grant of summary judgment in favor of Karen Perry on all remaining claims against her. We also affirm the grant of summary judgment in favor of the County on all but the supplemental state law claims. We affirm the dismissals of all claims against Jeff Luther, Brenda Walker, Kathy McBride, Dan Shoree, Chuck McAtee, and Stephanie Rumpler.[5] The parties shall bear their own costs on appeal.
 
 
 69
 AFFIRMED in part; REVERSED in part; and REMANDED.
 
 
 
 Notes:
 
 
 [1]
 We use the initials "MD" for Mabe's daughter to protect the privacy of the victim.
 
 
 [2]
 The record supports a finding of probable cause that MD should have been removed to compel the issuance of a warrant for removal. However, a showing of probable cause does not satisfy the conclusion that MD was in imminent danger of serious physical injury sufficient to justify a warrantless removal. LaLonde v. County of Riverside, 204 F.3d 947, 954 (9th Cir. 2000) ("[I]t is well settled constitutional law that, absent exigent circumstances, probable cause alone cannot justify an officer's warrantless entry into a person's home."). The failure to remove MD on August 17, 1995, is the strongest evidence in the record that Perry did not believe the circumstances were exigent.
 
 
 [3]
 The district court's grant of summary judgment for the section 1983 claims against MD's subsequent caretakers (Walker and Rumpler) is affirmed because there was no evidence presented that either of these Defendants-Appellees was acting under color of state law as agents or employees of the County. See Johnson v. Knowles , 113 F.3d 1114, 1118- 20 (9th Cir. 1996); Price v. Hawaii, 939 F.2d 702, 707-08 (9th Cir. 1991).
 
 
 [4]
 The duplicative claims include allegations of perjured statements in documents, interference with family reunification, disregard for MD's medical, dental and educational well-being, and wrongful placement of MD in an unsuitable foster home. These claims are barred by absolute immunity. See Babcock, 884 F.2d at 503; Meyers, 812 F.2d at 1159.
 
 
 [5]
 Rumpler's motion for correction of proof of service and relief from default is granted.