**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| BRIGIT BARNES, an individual and Guardian ad Litem for Minor Children R.X. and M.X. and JERRY BARNES, an individual, <br><br>         Plaintiffs - Appellants, <br><br>   v. <br><br> COUNTY OF PLACER, EMILY HILL, an individual and employee of the County of Placer, DEPUTY HARROUN, an individual and employee of the County of Placer and DOES 1-50 INCLUSIVE, <br><br>         Defendants - Appellees. | No. 09-16805 <br><br> D.C. No. 2:07-CV-01678-JAM-JFM <br><br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted June 18, 2010
San Francisco, California

Before: TASHIMA and BEA, Circuit Judges, and READE, Chief District Judge.[**]

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Brigit Barnes ("Brigit"), an individual and guardian ad litem of two minor grandchildren, M.X. and R.X., and Jerry Barnes ("Jerry"), Brigit's husband and co-guardian, (collectively, "Plaintiffs") appeal the district court's order granting summary judgment to the County of Placer, Emily Hill, Deputy Rick Harroun and Does 1-50, inclusive, (collectively, "Defendants") on Plaintiffs' claims that Defendants deprived them of their Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[1]

We review de novo the district court's grant of summary judgment to determine "whether, viewing the evidence in the light most favorable to the non-moving party, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 763 (9th Cir. 2006) (citation and internal quotation marks omitted).

Because the district court based its ruling on the second prong of the qualified immunity analysis set forth in *Saucier v. Katz*, 533 U.S. 194, 200 (2001), we confine our analysis to this issue. We conduct a two-part analysis of *Saucier*'s

** The Honorable Linda R. Reade, Chief United States District Judge, Northern District of Iowa, sitting by designation.

[1] Because the parties are familiar with the facts of the case, we will repeat them here only to the extent necessary to explain our decision.

second prong: "1) Was the law governing the official's conduct clearly established?" and "2) Under that law, could a reasonable official have believed the conduct was lawful?" *Rogers v. County of San Joaquin*, 487 F.3d 1288, 1296-97 (9th Cir. 2007) (citation and internal quotation marks omitted). "To be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1020 (9th Cir. 2009) (citation and internal quotation marks omitted). "The dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (citation and internal quotation marks omitted). If the official's mistake as to what the law requires is "reasonable," the defense applies. *Id.* (citation omitted).

On Wednesday, April 26, 2006, M.X.'s teacher filed a report of child abuse with Child Protective Services. The report included the following information: M.X. had bruises on the back of her thigh, M.X. stated she got the bruises when Jerry spanked her over the past weekend, M.X. had worn pants on Monday and a long skirt under her school uniform on Tuesday in what her teacher speculated might have been an effort to cover up the bruises, Jerry was very stern with the children, and Jerry had yelled at school staff that morning in front of M.X.

That same day, Placer County social worker Emily Hill read the report filed by M.X.'s teacher and arrived at the school at 1:30 p.m. Jerry was expected to pick

up M.X. and R.X. from school at 3:00 p.m.[2]  Hill interviewed M.X., confirmed Jerry struck M.X. with an object four days earlier, and called the sheriff's office. At 2:10 p.m., Deputy Harroun responded and met with Jerry when he arrived at the school around 3:00 p.m.  At most, Hill and Harroun had one-and-a-half hours to investigate the suspected child abuse.  Hill stated in a declaration that it typically takes three to six hours to get a court order to take a child into protective custody. When they decided to take M.X. and R.X. into protective custody without a warrant, Hill and Harroun knew: (1) Jerry hit M.X. hard enough to leave noticeable marks on her legs four days later; (2) Brigit had struck M.X. with a spatula in the past; (3) Jerry had yelled at school staff in front of M.X. earlier that day; (4) M.X.'s teacher suspected M.X. had been wearing clothing to cover her bruises; and (5) Jerry told Harroun that he might hit M.X. again under similar circumstances.

On May 1, 2006, four days after M.X. and R.X. were initially placed in protective custody, the Placer County Juvenile Court ("Juvenile Court") determined M.X. and R.X should remain in protective custody.  On May 19, 2006, the Juvenile Court ordered Placer County to return M.X. and R.X. to Brigit's custody.  On July 5, 2006, the Juvenile Court permitted Jerry to return home following his completion of anger management classes.

---

[2]  M.X. was eight years old and her sister, R.X., was five years old.

We agree with the district court's analysis. "Officials may remove a child from the custody of [her] parent without prior judicial authorization only if the information they possess at the time of the seizure is such as provides reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury." *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2000). It is well established that "serious allegations of abuse that have been investigated and corroborated usually give rise to a 'reasonable inference of imminent danger sufficient to justify taking children into temporary custody' if they might be beaten or molested during the time it would take to get a warrant." *Rogers*, 487 F.3d at 1294 (quoting *Ram v. Rubin*, 118 F.3d 1306, 1311 (9th Cir. 1997)). But it was not clearly established as of April 26, 2006 that the facts known to the officials in this case did not constitute reasonable cause. A reasonable official could have believed, based on the facts known to Hill and Harroun, that there was reasonable cause to believe the children were in imminent danger of serious bodily harm and that the decision to place the children in protective custody was lawful.

The district court correctly decided Hill and Harroun were entitled to qualified immunity even though they failed to contact Brigit before they placed M.X. and R. X. in protective custody. It was not clearly established as of April 26, 2006, that officials must contact a child's second legal guardian before they place

5

the child in protective custody when that guardian lives with another guardian, who the officials reasonably suspect is abusing the child. When Hill decided not to call Brigit, Hill knew that Brigit lived with Jerry, who was suspected of abusing M.X. Also, Hill had learned from M.X. that Brigit had spanked M.X. with a spatula and had learned that M.X.'s teacher suspected M.X. had been wearing clothes to cover up her bruises. A reasonable official could have believed that the decision to place the children in protective custody before contacting Brigit was lawful.

The district court correctly granted summary judgment to Hill and Harroun with respect to the Barneses' claim that the continued "detention" of the children after their initial removal from school violated the Barneses' Fourteenth Amendment due process right to familial association. "[O]nly official conduct that 'shocks the conscience' is cognizable as a due process violation." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). Here, the district court correctly concluded that neither Hill nor Harroun engaged in conduct that shocks the conscience in their investigation of the alleged abuse of M.X.

The district court also correctly decided that qualified immunity bars the § 1983 claims for custody decisions subsequent to the Juvenile Court's order. *Mabe v. San Bernadino County Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1109 (9th Cir. 2001) (discussing qualified immunity in custody matters following court order).

Accordingly, the district court correctly granted summary judgment. *McSherry v. City of Long Beach*, 584 F.3d 1129 (9th Cir. 2009) (affirming grant of summary judgment on qualified immunity).

**AFFIRMED.**