**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT



FILED

OCT 26 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SHEILA GARCIA; CASSANDRA GARCIA; C.N.G., a minor, by and through their Guardian Ad Litem, Donald Walker; C.J.G., a minor, by and through their Guardian Ad Litem, Donald Walker, <br><br>       Plaintiffs-Appellees, <br><br> v. <br><br> CAITLIN MCCANN; GLORIA ESCAMILLA-HUIDOR; JESUS SALCIDO, <br><br>       Defendants-Appellants, <br><br>  and <br><br> COUNTY OF SAN DIEGO; SAN DIEGO HEALTH AND HUMAN SERVICES AGENCY; POLINSKY CHILDRENS CENTER; SRISUDA WALSH; MARTHA PALAFOX; LAURA QUINTANILLA; DOES, 1 through 10 Inclusive, <br><br>       Defendants. | No.   19-55022 <br><br> D.C. No. <br> 3:15-cv-00189-JLS-NLS <br><br><br> MEMORANDUM[*] |

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appeal from the United States District Court
for the Southern District of California
Janis L. Sammartino, District Judge, Presiding

Submitted April 16, 2020**
Pasadena, California

Before: SCHROEDER and COLLINS, Circuit Judges, and BAYLSON,*** District Judge.
Partial Concurrence and Partial Dissent by Judge COLLINS

Defendants-Appellants Caitlin McCann, Gloria Escamilla-Huidor, and Jesus Salcido, San Deigo County social workers, appeal the district court's denial of qualified immunity in this 42 U.S.C. § 1983 action. Plaintiffs include Cassandra Garcia, her two sisters, and their mother. They contend the children's warrantless removal from their parents' home, Cassandra's placement in an emergency shelter rather than the psychiatric inpatient program chosen by her parents, and Cassandra's subsequent treatment in the emergency shelter, violated plaintiffs' Fourth and Fourteenth Amendment rights.

1. It has been well-settled law in this circuit for two decades that authorities may not remove a child from the parents' custody without judicial authorization, unless there is reasonable cause to believe the child is in imminent danger of bodily

___

** The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

*** The Honorable Michael M. Baylson, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

2

injury or serious harm. *See Demaree v. Pederson*, 887 F.3d 870, 883 (9th Cir. 2018) ("It is 'beyond debate,' . . . that existing Ninth Circuit precedent establishes that children can only be taken from home without a warrant to protect them from imminent physical injury or molestation in the period before a warrant could be obtained") (citing and discussing *Mabe v. San Bernardino County*, 237 F.3d 1101, 1108–09 (9th Cir. 2001) and *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2000)). Exigency is a "very limited exception" to the warrant requirement. *Wallis*, 202 F.3d at 1140. Defendants are entitled to qualified immunity on issue (1) only if the allegations of abuse are exigent as a matter of law.

Because the record is unclear on whether leaving the children in the home would have put them at risk of "imminent danger of future harm," the district court properly denied qualified immunity on this claim. *Mabe*, 237 F.3d at 1108. Several facts, viewed in the light most favorable to Plaintiffs, undermine the reasonableness of a belief of exigency. First, the only reported incident of abuse in the home concerned Cassandra, not her sisters. *Cf. id.* (noting that the evidence of exigency was "more compelling" where the victim who reported the abuse was still in danger of harm). Second, Cassandra reported that the incident occurred more than one month before the sisters' removal from the home, and there is no evidence that the abuse was recurring. *See id.* (holding that exigency was undermined by the

3

fact that the inappropriate touching had stopped in the month after the initial police report was made). As Defendants note, other facts may support a finding of exigency, including that it would have taken 24 to 72 hours to procure a warrant and that Defendants acted promptly after conducting their initial inquiry. As in *Mabe*, these factual disputes prevent the conclusion that, as a matter of law, imminent serious injury justified the warrantless removal of the sisters from their home. It is up to a jury to determine whether Defendants had "reasonable cause to believe exigent circumstances existed." *Mabe*, 237 F.3d at 1108.

Defendants invoke on appeal only the Supreme Court's warning, given in the context of excessive force cases, that we not define the law at too high a level of generality. *See Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018). In this case however we deal with a specific line of cases that provides "clear notice of the law to social workers responsible for protecting children from sexual abuse and families from unnecessary intrusion." *Demaree*, 887 F.3d at 884 (citing and discussing *Mabe* and *Rogers v. Cnty. of San Joaquin,* 487 F.3d 1288 (9th Cir. 2007)). Further, "[w]hile the Supreme Court has repeatedly admonished this court not to define clearly established law at a high level of generality, we need not identify a prior identical action to conclude that the right is clearly established." *Ioane v. Hodges*, 939 F.3d 945, 956 (9th Cir. 2018) (internal citation omitted).

Although there is no case with this precise set of facts, it has been well established since at least 2000 that social workers "may remove a child from the custody of its parent without prior judicial authorization only if the information they possess at the time of the seizure is such as provides reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury." *Wallis*, 202 F.3d at 1138. Defendants McCann and Escamillao-Huidor are not entitled to qualified immunity on plaintiffs' claim that the sisters should not have been removed without a warrant on the basis of a single assault that had been reported several days earlier, and had occurred months before the removal.

2.     Plaintiffs' second set of allegations with respect to Cassandra are that Defendants placed her in a facility that was contrary to her mother's wishes and where she was mistreated.  Plaintiffs claim this violated her mother's rights to make critical medical decisions for her child.  We have recognized the violation of such a due process guarantee in a situation where officials failed to obtain the parents' consent to an invasive medical examination.  *Wallis*, 202 F.3d at 1141. Yet we have never recognized a due process claim in a situation like the one here, where the children's mother asserts that her due process rights were violated because a child that had been removed from her care was placed in a facility other

5

than one of her choosing. Plaintiffs have thus failed to identify a "case where an officer acting under similar circumstances . . . was held to have violated" the Fourteenth Amendment. *S.B. v. Cnty. of San Diego*, 864 F.3d 1010, 1015–16 (9th Cir. 2017) (citation omitted). We are thus not dealing with a clearly established rule that would have put the social workers on notice that their conduct violated the law. Defendants are entitled to qualified immunity on this claim.

3.      Plaintiffs further assert that Defendant Salcido's alleged failure to respond to Cassandra's repeated threats of suicide, after Salcido placed her in the Polinsky Children's Center, rose to the level of deliberate indifference to the child's medical needs. In this circuit, we have held that "once the state assumes wardship of a child, the state owes the child . . . reasonable safety and minimally adequate care and treatment appropriate to the age and circumstances of the child." *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 846 (9th Cir. 2010) (citation omitted). We have specifically recognized due process violations when instructions of the child's treating physician went unheeded, and the resulting failure of the child to receive adequate care directly harmed the child. *Henry A. v. Wilden*, 678 F.3d 991, 1001 (9th Cir. 2012). Yet neither of the cases relied upon by plaintiffs involved a social worker acting under similar circumstances as Defendant Salcido. Plaintiffs' allegations do not involve ignoring a treating physician's advice, nor do they

6

involve Salcido's placement of a child with a dangerous foster parent. Defendant Salcido is thus entitled to qualified immunity on this claim.

4.     The district court properly held there were disputed issues of material facts precluding the grant of qualified immunity on Plaintiffs' claim that the warrantless removal of the children from their parents' custody was unlawful. On Plaintiffs' other two claims, however, qualified immunity should have been granted to the county officials.

**AFFIRMED IN PART, REVERSED IN PART, REMANDED**.

Each party to bear its own costs.

FILED

OCT 26 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

COLLINS, Circuit Judge, concurring in part and dissenting in part:

I concur in sections 2 and 3 of the majority's memorandum disposition, in which the court (1) partially reverses the district court's denial of qualified immunity to Defendants-Appellants Caitlin McCann and Gloria Escamilla-Huidor, and (2) reverses the district court's denial of qualified immunity to Defendant-Appellant Jesús Salcido. But I would also reverse the denial of qualified immunity on the sole remaining claim against Defendants McCann and Escamilla-Huidor, which concerns the warrantless removal of the Garcia children. As to that issue, I therefore respectfully dissent.

1. The majority commits a threshold legal error by erroneously collapsing the two separate prongs of the qualified-immunity inquiry. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). These are separate prongs, and although the court has "discretion to decide which of the two prongs of qualified-immunity analysis to tackle first," *id.*, it is legally erroneous to merge the two questions. *See Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1048–50 (9th Cir. 2002). The majority, however, does just that, by framing the ultimate

qualified immunity issue (prong two) *entirely* in terms of the underlying merits of the constitutional claim (prong one).

Specifically, according to the majority, "Defendants are entitled to qualified immunity" on the warrantless-removal claim "only if the allegations of abuse are exigent as a matter of law." *See* Mem. Dispo. at 3. That, however, is the standard for evaluating the *merits* of the underlying constitutional claim at the summary-judgment stage—*i.e.*, it is the prong-one inquiry. As the majority itself later frames the underlying substantive rule that governs the merits, "social workers 'may remove a child from the custody of its parent without prior judicial authorization only if the information they possess at the time of the seizure is such as provides reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury." *Id.* at 5 (quoting *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2000)). But to defeat qualified immunity, a plaintiff must make the *further* showing required by prong two, which is that, at the time the defendant acted, "every reasonable official would understand that what [the defendant] is doing is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (simplified). Thus, the relevant question here at prong two is whether, in light of then-existing precedent, *every reasonable official would have recognized* that the information Defendants possessed did not "provide[] reasonable cause to believe

2

that the child[ren] [were] in imminent danger of serious bodily injury." *Wallis*, 202 F.3d at 1138. The majority fails to pose, much less answer, that question. Instead, it purports to deny qualified immunity on the prong-one ground that "the record is unclear on whether leaving the children in the home would have put them at risk of 'imminent danger of future harm.'" *See* Mem. Dispo. at 3. I agree with that statement as far as it goes, and for that reason I would not grant summary judgment based on prong one. But by erroneously framing the qualified immunity issue in such terms, the majority effectively omits the crucial second step of the analysis.

2. The majority compounds its error by later stating that the applicable law has been clearly established, so as to defeat qualified immunity, simply because we articulated the above-quoted *Wallis* standard in 2000. *See* Mem. Dispo. at 5. In doing so, the majority violates the clear instruction of the Supreme Court, which "has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (simplified). The mere articulation of the very generally worded standard in *Wallis* is not sufficient, without more, to show that Defendants violated clearly established law. Rather, as explained, the plaintiff must make a more case-specific showing that "'the right's contours were sufficiently definite that *any reasonable official in the defendant's shoes* would have understood that he

3

was violating it.'" *Id.* at 1153 (emphasis added) (citation omitted). In this sense, the majority's over-generalizing of the clearly established law is comparable to its erroneous collapsing of the two separate prongs of the qualified-immunity inquiry: in both instances, the majority elides the critical element that the plaintiff must show that, under then-existing precedent, every reasonable social worker would have realized that Defendants did not have reasonable cause to believe that the Garcia children were in imminent danger.

The majority suggests that the Supreme Court's admonition against defining clearly established law at a high level of generality is limited to excessive-force cases, *see* Mem. Dispo. at 4, but that is wrong. In fact, that same admonition has been given by the Court in a variety of cases under 42 U.S.C. § 1983 (and even under 42 U.S.C. § 1985). *See*, *e.g.*, *Wesby*, 138 S. Ct. at 590 (false arrest); *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866–67 (2017) (conspiracy under § 1985); *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015) (warrantless entry); *Reichle v. Howards*, 566 U.S. 658, 665 & n.5 (2012) (First Amendment retaliatory arrest); *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (scope of search); *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (warrantless search). More importantly, this court has already applied this principle to the warrantless removal of children, the very issue before us:

> In July 2008 it was well-settled that a child could not be removed
> without prior judicial authorization absent evidence that the child was

4

in imminent danger of serious bodily injury. But the Supreme Court has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality.

*Kirkpatrick v. County of Washoe*, 843 F.3d 784, 792 (9th Cir. 2016) (simplified).

Under *Kirkpatrick*, the inquiry must be framed as follows: Defendants are entitled to qualified immunity unless in 2013 (when Defendants acted) it was "beyond debate that the confluence of factors" *in this case* "would not support a finding of exigency." *Id*. at 793. The majority commits legal error in framing the qualified-immunity question at a higher level of generality than *Kirkpatrick* allows.

3. Applying the correct qualified-immunity standards, I would reverse the denial of qualified immunity to McCann and Escamilla-Huidor.

View in the light most favorable to Plaintiffs, the evidence established that Defendants were aware of the following circumstances at the time that they acted: that a 16-year-old girl had reported to an initial social worker that her father had inappropriately fondled her while drunk and that her parents would regularly drink until vomiting, leaving her to care for her two- and ten-year-old sisters; that the initial social worker reported that the 16-year-old was tearful and unable to say if the inappropriate touching had happened previously or to her sisters; that the ten-year-old sister denied that sexual abuse had happened to her but confirmed that the parents would drink to the point of vomiting, although "not so much lately"; that, even though the 16-year-old later claimed that the incident with her father was an

5

isolated accident, the initial social worker had found the 16-year-old's emotional earlier account (which professed uncertainty about other incidents) to be credible; and that a warrant would have taken at least 24 to 72 hours to obtain. I think that, under then-existing precedent in 2013, it "was not beyond debate that the confluence of factors set forth above would not support a finding of exigency." *Kirkpatrick*, 843 F.3d at 793. Put another way, it cannot be said that every reasonable social worker would have recognized in 2013 that these facts did not support a warrantless removal.

None of the precedents cited by the majority shows that "the state of the law at the time of [the] incident provided fair warning to the defendant[s] that *[their] conduct* was unconstitutional." *Jessop v. City of Fresno*, 936 F.3d 937, 940 (9th Cir. 2019) (emphasis added) (citations and internal quotation marks omitted). The majority relies primarily on *Mabe v. San Bernardino County*, 237 F.3d 1101 (9th Cir. 2001), *see* Mem. Dispo. at 3–4, but the case is materially distinguishable. Indeed, the majority concedes two very significant differences between *Mabe* and this case. First, "Defendants acted promptly after conducting their initial inquiry," *see* Mem. Dispo. at 4, whereas in *Mabe*, the social worker delayed for four days after conducting her investigation and securing evidence corroborating the referral, thereby casting substantial doubt on the notion that there was an exigency justifying a warrantless removal. 237 F.3d at 1108. Second, the majority concedes

6

that here "it would have taken 24 to 72 hours to procure a warrant," *see* Mem. Dispo. at 4, whereas the warrant in *Mabe* could have been procured within "a few hours." 237 F.3d at 1108. The only point of commonality that the majority identifies is its claim that here, as in *Mabe*, "there is no evidence that the abuse was recurring." *See* Mem. Dispo. at 3. But the absence of *affirmative* evidence of continuing abuse is *not* sufficient to defeat qualified immunity. The question is whether every reasonable social worker would have concluded that, based on the uncertain and conflicting statements made by the 16-year-old daughter, there was no "reasonable cause" to believe that there was imminent danger.[1] Nothing in *Mabe* supports the conclusion that the answer to that question is yes.

The majority also cites, but does not analyze, *Rogers v. County of San Joaquin*, 487 F.3d 1288 (9th Cir. 2007), and *Wallis*, 202 F.3d at 1138. *See* Mem. Dispo. at 3–5. Neither case is sufficient to defeat qualified immunity here. In *Rogers*, the court declined to find an "imminent risk of serious bodily harm" based on "chronic, ongoing" problems with the children's health and nourishment when a warrant could have been secured "within hours." 487 F.3d at 1295–96. That bears

---

[1] I disagree with the majority's suggestion that, if there was a risk of sexual abuse, it was limited to the 16-year-old and that qualified immunity should still be denied as to the removal of the other two children. *See* Mem. Dispo. at 3. It cannot be said that, under the then-existing precedent, every reasonable social worker would have recognized and agreed that, where there has been sexual abuse of one child, the other children can confidently be left in the house with the alleged abuser.

7

no similarity to the situation presented here, where the concern was sexual abuse and where a warrant would take 24–72 hours to obtain. And *Wallis* is even further afield from this case. In *Wallis*, the issues were whether removal was appropriate where the officers did not properly investigate the underlying charge—which was based on a "bizarre" story from an "institutionalized mental patient" about alleged human sacrifice—and whether the duration of the removal and the application of the removal to both parents were justified. 202 F.3d at 1138–41. Nothing comparable is involved here.

Finally, the majority's reliance on *Demaree v. Pederson*, 887 F.3d 870, 883 (9th Cir. 2018) (cited at Mem. Dispo. at 3–4), is plainly improper, because that decision postdates the events in this case. In *Kisela*, the Supreme Court chastised this court for similarly relying on a case decided *after* the incident in question, because such a decision "could not have given fair notice" to government officials years earlier and is "of no use in the clearly established inquiry." 138 S. Ct. at 1154 (citations and internal quotation marks omitted). To the extent that the majority apparently thinks that it can cite *Demaree* for its explanation of what the earlier law was, that too is wrong: the Supreme Court reprimanded us for that as well in *Kisela*, holding that we should not have relied on the case even for "illustrative" purposes. *Id.*

Because then-existing precedent did not place beyond debate whether there

8

were exigencies justifying Defendants' warrantless removal of the children, I conclude that Defendants are entitled to qualified immunity on this issue. I therefore respectfully dissent from sections 1 and 4 of the memorandum disposition.